**ROBINSON v. CHANCE.**
No. 11228.

United States Court of Appeals,
Third Circuit.

Argued April 22, 1954.

Decided June 8, 1954.

Joseph B. Lynch, New York City (William C. Bodine, Thomas E. Comber, Jr., Philadelphia, Pa., Lawrence X. Cusack, New York City, Pepper, Bodine, Stokes & Hamilton, Philadelphia, Pa., on the brief), for plaintiff-appellant.

Bernard G. Segal, Philadelphia, Pa. (Wm. A. Schnader, Gilbert W. Oswald, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the question of the defendant's liability individually and as trustee under a trust settlement executed by him in May, 1939. The plaintiff charges the defendant with a breach of the trust. The district court denied relief and gave judgment for the defendant in an opinion which very carefully analysed the issues and reached conclusions thereon. The plaintiff appeals.

In 1938 the defendant acquired the entire capital stock of a company named United Engineers and Constructors, Inc. This was and is a service organization which provides engineering services in connection with the designing and erection of industrial plants, chiefly in the public utility field. At the time defendant acquired this stock the company was insolvent. The next year defendant created a trust with the stock as the trust res. The beneficial interests were represented by what the document called trust "units." The defendant issued slightly more than half of these to himself and divided the remainder among persons he considered to be key employees of the company, among whom was this plaintiff. No consideration was asked by nor paid to the defendant.

The plaintiff, who was the defendant's predecessor as President of United Engineers, remained in the company's employ until 1944. At that time he was seventy-five years of age. Four years later, relying upon the authority claimed to be given him by the trust deed, the defendant cancelled the plaintiff's trust "units" and offered him $30 per unit therefor. This price the plaintiff claims to be so grossly inadequate as to constitute a breach of trust by the trustee.

The case is in federal court by diversity only. Plaintiff is a resident of Massachusetts; the defendant a resident of New Jersey. Plaintiff suggests New Jersey law governs as this is "a matter of interpretation" of the trust deed. Restatement, Conflict of Laws § 296. Defendant says Pennsylvania law governs

as this is a matter of administration of the trust. Restatement, Conflict of Laws § 297. The trust instrument was executed in Philadelphia and United Engineers has its home office in Philadelphia. We think the question is not the meaning of words as used but rather their legal effect, and that, consequently, Pennsylvania law governs. See Restatement, Conflict of Laws § 296, comment *a*. The parties agree, however, that they find no divergency between Pennsylvania and New Jersey law in this matter which affects the result here. We agree also.

This trust instrument was drawn to give the trustee a very wide latitude. In paragraph 10 thereof it is provided that in selling the interest of a beneficiary "the Trustee shall fix such price therefor as he shall determine to be fair." Then the document goes on to say "the Trustee's judgment in this regard shall not be subject to review by any court or otherwise." And the concluding paragraph of the trust instrument provides "Nor shall the Trustee * * * be liable to any beneficiary * * * for any act whatever done in the administration of this trust except for wilful and intentional breach of trust."

It is suggested that these provisions plus a specific finding made by the district court should settle this case in favor of the defendant. The district court concluded its discussion of the matter by saying "the Court finds that the defendant as trustee exercised his discretion honestly and in good faith and within the limits accorded him by the Declaration of Trust." The reference to the trustee's honesty and good faith is reference to a fact and constitutes a finding. The latter part of the statement, we think, involves a conclusion of law which will be discussed hereafter. We have, then, these two exculpatory provisions plus a specific finding of good faith on the part of the trustee.[1]

We do not think, however, that the case can be settled as peremptorily as this argument indicates. It is true that the trust settlement gives to the trustee an unlimited discretion in carrying out the trust which he set up. But we think we still have the question whether the trustee was acting, with regard to the sale of the plaintiff's units, within the authority given by the trust instrument. If he goes beyond that authority and devotes the trust to persons other than beneficiaries and to matters other than those which he, himself, has specified in his trust deed, he is not, even though acting in good faith, acting in accordance with that document. If he does that, he has passed beyond the area where he is protected in the exercise of the discretion which the instrument gives him in administration of the trust.

The solution of the question must turn upon the language of the trust deed. Whatever understanding the settlor may have had, he is limited by what he did in setting up this trust. Here is where the plaintiff's strongest argument comes.

In paragraph 4 it is provided that "The beneficiaries of this trust * * * shall be the holders named in certificates of interest * * *." In paragraph 6 of the same document it is provided that "Each beneficiary shall continue as such as long as such beneficiary continues in the active service of United Engineers & Constructors, Inc." It appears from the record, both in the answers to interrogatories submitted to the defendant and in correspondence between the parties, that Colonel Chance had a very definite view about his own purpose in setting up the trust. In one place he said: "My basic purpose in setting up the trust was to share with responsible members of the active staff of the corporation the earnings their efforts helped produce." This point of view is reiterated over and over again in the record.

In furtherance of this purpose, defendant admittedly priced plaintiff's units low enough to be purchased by the company's moderately-salaried employees.

---

1. Note that "The settlor cannot confer upon the trustee such an unlimited power that the court will not entertain a suit by the beneficiary to prevent the trustee from acting dishonestly." Restatement, Trusts § 187, comment *k*.

And we are willing to make the same assumption which the district court did, that the valuation placed on the units by the defendant was less than their "true" value.

The plaintiff says all this talk about purpose is very interesting but cannot affect his rights which stem from the trust deed, and this document by its terms makes him a beneficiary. He argues that it does not matter that he did not pay anything for his trust units. Since he is a beneficiary under the deed, the trustee, like any other trustee, must secure for him the best possible price for his interest. Because in carrying out the power to sell the trust units, the trustee looked to the interest of potential beneficiaries, rather than to that of a present beneficiary, and thereby undervalued plaintiff's holdings, the trustee has committed a breach of trust and is responsible therefor.

We, therefore, get down to the basic question in the case. Is there authority in the trust deed for the defendant to carry out what he has considered to be the basic purpose of the trust which he set up? We conclude that the answer is in the affirmative, and we reach that conclusion by noting the sum total of the powers which the settlor gave himself in his trust deed.

These units which beneficiaries receive are certainly very different things from ordinary corporation shares or even instruments in an investment trust. Only employees of United Engineers can hold the units (paragraph 6). Furthermore, if a holder endeavors to assign his unit, he immediately forfeits his interest and gets nothing for it (paragraph 14). If the beneficiary ceases to be in the active service of United Engineers his interest comes to an end. If it comes to an end by death or retirement the trustee is empowered to sell the beneficiary's interest (paragraph 7). But if the beneficiary leaves the corporation's employ "under circumstances which, in the opinion of the Trustee, are inimical to the interests of the Corporation, or shall be dismissed for conduct, which in the opinion of the Trustee has been harmful to the interest of the Corporation," the beneficiary's interest is to be immediately terminated and he gets nothing for it (paragraph 8). Note also that the question whether the circumstances are such as to be "inimical to the interests of the Corporation" is solely in the hands of the trustee. The trustee may sell the corpus of the trust (paragraph 16). The trust is to continue during the lifetime of the defendant regardless of his connection with the United Engineers and for twenty-one years thereafter, subject to certain exceptions (paragraph 18). The trustee is to be under no liability (paragraph 23).

Finally, paragraph 11 of the instrument gives the trustee sole discretion as to the time of sale of any unit, notwithstanding the provision, noted above, that a unit holder ceases to be a beneficiary when his employment by United terminates. It should be noted that defendant exercised this discretion in favor of plaintiff by postponing the sale of his units for over four years. Because of this deferment, plaintiff received almost $50,000 in dividends, to which he otherwise would not have been entitled.

We think the sum total of all these broad powers shows that the settlor in a unilateral transaction, aided by skillful counsel, gave himself practically unlimited powers subject only to the requirement that he act honestly. This is a natural interpretation. He was President of United Engineers and his employees were getting these units without paying for them. It is to be expected that he would want to keep a free hand and give himself the limit of powers possible under the law. This he did.

The foregoing analysis makes it unnecessary to evaluate the effect of the correspondence between the parties, the expert testimony as to the value of shares of United Engineers, and the further question whether the value of shares, if ascertainable, bore relation to the value of these trust units. Since it has been expressly found that the defendant acted honestly and we find that

he was acting within the authority given him by his own trust instrument, our conclusion is that there is nothing further to discuss.

The judgment will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

There is little difficulty in resolving this case once the synthetic atmosphere of goodness betrayed is eliminated from it. And eliminated it should be not only because it is not even a false issue but because it has been .created solely from the conception of plaintiff giving no consideration for his stock units and defendant's delay in his offer to purchase them which resulted in dividends to plaintiff during the interval.

Actually what happened was that in 1938 defendant bought all the stock of the then insolvent corporation involved for twenty cents a share, a total of $5,000. A year later with the company's position little if any improved he divided the stock into units, one for each share. Retaining the majority of these he distributed the balance under the trust agreement, as the court opinion states, among the company's key employees. Eventually that shrewd employee incentive project literally paid big dividends. For the year 1948 the latter amounted to $36 a unit. It had been early in that year (February) that defendant tried to buy up plaintiff's units under the fair price term of the trust at $10 a unit. When the attempt was made defendant was still in control of the company and active in its affairs. Plaintiff had been retired since 1944. It can be reasonably inferred that defendant knew more of the financial status of the corporation during that stage of its affairs than did plaintiff. It is the fact that the 1948 dividend was the highest paid by the company to that date. The same rate of $36 continued yearly thereafter through 1951, the latest year of which we have record. The year plaintiff retired there had been no dividend nor had there been any the year before. In 1945, the year after, again there was no divi-

dend. In 1946 there was a $2 dividend and in 1947 a $15 dividend. From the bare figures the advisability of exercising the right to put any money into the purchase of plaintiff's units for the first few years after his retirement might have been questionable to one possessing inside knowledge of the corporate picture but by 1948 that right was worth while, particularly if it could be exercised at some nominal amount.

After the $10 offer had been rejected defendant increased it to $30 under the self same fair price condition of the trust. That was also refused. The district judge assumed the $30 to be "substantially below the actual value" and this court now assumes that "[t]he valuation placed on the units by the defendant was less than their 'true value' ". Though proof of the value of the units was deferred by stipulation of counsel pending the trial court's decision whether the transfer price of the units should be redetermined by the court, there is evidence showing the value of the stock to have been $228 a share at the time the $30 per unit proposition was made. This suggests some faint idea of the value of plaintiff's units.

The question as conceded by the majority opinion is whether appellee acted within the authority given him by the trust agreement of May 24, 1939 or as stated in the opinion, whether he went beyond that authority and devoted "[t]he trust to persons other than beneficiaries and to matters other than those which he himself has specified in his own trust deed * * *." There is no dispute on the controlling trust law.

The solution of course turns on the language of the trust deed. In its paragraph 4 the beneficiaries are clearly designated. The pertinent part of this reads:

"The beneficiaries of this trust, subject to the conditions and provisions hereinafter set forth, shall be the holders named in certificates of interest, * * *."

Succeeding paragraphs 5, 6, 7, 8, 9, 10, 12 and 13 expressly support this desig-

nation. Paragraph 12 makes a sharp distinction between a "beneficiary" and a "person eligible to be a beneficiary." Paragraph 13 emphasizes that distinction saying: "A purchaser from the Trustee of an interest of a beneficiary of this trust, or portion thereof, shall become a beneficiary of this trust to the extent of the interest or portion thereof purchased by him, with all the rights and subject to all the limitations herein provided with respect to the original beneficiaries named herein." There is nothing in the agreement in any way departing from or obscuring in the slightest degree the trust's definitive statements of just who its beneficiaries are.

Admittedly defendant has devoted the trust to others than the beneficiaries, namely, to the corporation and employees not unit holders but who might become such. By such inclusion, varying as it does the unambiguous designation of beneficiaries in the agreement, defendant violated the trust. His consideration of the corporation and of prospective purchasers of plaintiff's units in fixing a fair price for them was contrary to his agreed duty to plaintiff. It was to plaintiff's serious damage as those improper factors according to the frankly disclosed theory of defendant himself depressed the value of the units to the point where their agreement fair price was the nominal one of ten dollars. Defendant's action in using those unjustified elements in his calculation is construed as entirely proper by the court opinion though it is directly opposed to the governing trust rule, above quoted, set out in that same opinion.

The majority finds excuse for what defendant did first, by reference to his answers to interrogatories in this suit and to a letter he wrote plaintiff in 1949. His later ideas expressed in those writings can hardly be accepted as radically changing a precise complete instrument executed back in 1939 on which plaintiff rightfully relied. The second clearance for defendant is said to follow from the various clauses of the agreement referring to the method of acquiring and disposing of the units, to the authority of the trustee to sell the trust corpus, to the continuance of the trust, to the non-liability of the trustee under certain conditions and to the discretion of the trustee as regards the time of sale of the units. Jointly or severally those items do not conflict with, they do not touch the agreement's carefully designated beneficiaries, the holders of the units. They give no authority to the trustee to bring into the agreement as beneficiaries either the corporation or prospective beneficiaries whose interest of necessity is hostile to the actual beneficiaries.[1]

There was never anything the matter with the agreement. It was simply misused. If defendant had originally desired that the corporation and prospective purchasers of units be included as beneficiaries he had only to insert it in the trust deed, already so heavily weighted in his favor. And in fact he never needed it until the unexpected happened. This plaintiff, alone of the employees, dared to stand up for his rights under the agreement, meager as they were. When that did occur the defendant, ten years after the agreement had been drawn to his exact specifications, endeavored to interpret it contrary to its plain mandate.

Plaintiff, having contributed his full share towards developing the enterprise into a valuable property, asked the trustee to live up to his solemn inducing commitment. The latter not only refused but seeks to characterize the in-

---

1. One minor point especially stressed in the majority listing of the above agreement terms relates to the clause having to do with where a beneficiary leaves the corporation's employ "[u]nder circumstances which, in the opinion of the Trustee, are inimical to the interests of the Corporation, * * *." That has no bearing whatsoever on the issue at bar. Plaintiff had retired four years previously. He had been recognized by defendant as qualified to receive a fair price for his units.

sistence of plaintiff as some sort of mean effort to take advantage of his philanthropy. However, that is not what the record shows. Clear as clear we have before us an agreement extremely practical and mutually advantageous, performed by plaintiff and breached by defendant to plaintiff's damage.

I think the judgment of the district court should be reversed and the cause remanded for the fixing of the fair price of the plaintiff's units as called for by the trust deed and for any necessary accounting between the parties.